May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Marta Ahmed, who for the past six years has been married to a United States citizen and is now the mother of a two-year-old United States citizen's son. By January 8, 2004, when the Board of Immigration Appeals summarily affirmed an immigration judge's denial of Ms. Ahmed's applications for asylum and withholding of removal, Ms. Ahmed and her had been together as a couple for almost four years. Because Ms. Ahmed had entered the United States legally and was now married to a United States citizen, she was eligible to seek reopening of her removal proceedings pursuant to the Board's decision in the matter of Velarde Pacheco, as long as she filed that motion within 90 days of the Board's order. Her attorney, Yemi Getachew, however, dithered for approximately nine months and ultimately filed that motion some six months late. When she filed her motion six months late, Ms. Getachew made absolutely no reference at all to the controlling case, Velarde Pacheco, or the 90-day filing deadline, and failed to submit any evidence at all demonstrating the bona fides of Ms. Ahmed's marriage to her husband, Mr. Sabir. Although it's now undisputed that Ms. Ahmed's marriage to Mr. Sabir is bona fide, the BIA found that Ms. Getachew's failures did not rise to the level of ineffective assistance of counsel. When you say it's undisputed, you're saying the BIA agrees that it was in fact bona fide? The BIA ruled, Your Honor, that she would not have been able to prove that it was bona fide within 90 days of her marriage. It's undisputed that the marriage is bona fide, because at this point we have an approved I-130 petition from USCIS. And in approving that petition, they necessarily found that Ms. Ahmed had met her burden of establishing by clear and convincing evidence that she had introduced this marriage in conflict. But almost all the documents you submitted were to prove the marriage was valid or dated well after April of 2004. Well, that's largely true, Your Honor. At this point, if we want to go right to prejudice, I'm okay with that. My threshold position with regard to prejudice at this point is undisputed that the marriage is bona fide. And in assessing prejudice, we have to determine, does Ms. Ahmed have plausible grounds for relief? If her marriage — everybody agrees today her marriage is bona fide. Everybody agrees today that she was able to satisfy her burden of establishing by clear and convincing evidence that the marriage is bona fide. And it's our view that if she was able to satisfy that burden, it's certainly plausible that she could have satisfied that burden pursuant to a timely-filed Velarde-Pacheco motion. And that goes to the motion to reopen, is it? Yes, exactly. It goes to the motion to reopen, because the motion to reopen was not filed timely. But, you know, in terms of why evidence was not presented back then, that's answered and it's undisputed here in the record that her attorney, Ms. Getachew, simply never asked. You know, I think it's important to note that the motion that Ms. Getachew filed, it doesn't even mention Velarde-Pacheco. It doesn't even mention the key case. So the question is, could she have presented sufficient evidence to show that the marriage was genuine at the time, the 90 days after the board decision? Right. And if you look at her sworn affidavit, this is on pages 11 and 12, and this is completely uncontradicted. And, you know, under our precedent, sworn affidavits of this sort, they have to be unworthy of belief. But her affidavit says, if you look at the bottom of page 11 and then the top of page 12, I'm so frustrated that my Ms. Getachew is now saying this, because they never asked me for any more proof of our marriage at the time they were preparing the motion to reopen. All Ms. Getachew asked for at that time was one or two pictures of the marriage. And the fellow that she was working with, Mr. Obeyemi, never asked me for anything. She goes on to say, if they had only asked, of course we would have provided them. Our friends could have written letters whenever we asked, and we could have collected other documents at that time. Now, years later, we're talking six, seven years later, she says we have so little information from that period, because who keeps ticket stubs and phone bills for years and years? The bottom line is, everybody agrees the marriage is bona fide. She says in her sworn affidavit, if they just asked me at that time, I would have given them all the evidence they needed. And it's obviously beyond dispute at this point, if they had been requested to do so, at a minimum, she could have provided her own sworn affidavit and her husband's sworn affidavit detailing when they met, how they met, when he enrolled at school in Nebraska, why he felt the need to attend school in Nebraska, how he was traveling back whenever he had a vacation. But they never asked. And if you look at the evidence that was submitted here, you know, some of the evidence that remains from that period, for example, we have pages 14 through 29. These are pictures of Ms. Ahmed and her husband from periods that predate the marriage all the way up until 2006, showing them on vacations in Tahoe, in Reno, you know, all these various places where they traveled together. But the board didn't even consider that. The board said she presented no evidence that she could have met the Velarde-Pacheco standard, if a timely motion had been filed, but that's just wrong. That ignores her declaration that says, I could have presented the evidence if only they had asked. It ignores the various photographs that they presented of themselves throughout their now, you know, eight-year relationship. And it also ignores the various affidavits that came from friends. And it's true that these are dated from, like, November of 2004, but these people all testify that they have known them as a couple since 2000. And the reason they're dated November of 2004 is because Yemi Getachew never asked her to get these affidavits until they were scheduled for a visa interview with USCIS. These documents were obtained for the visa interview with USCIS, not presented to the immigration team, which they did. But this exact same evidence could have been presented to the Board of Immigration Appeals. And if it had been, of course, it's plausible that the board would have found that her bona fide marriage was bona fide, because everybody agrees at this point, it is bona fide. Kennedy. What was the date of the 90 days after the board decision? I think it's from January to April 28th or so of 2004. And these documents here are from November of 2004, but they're affidavits from friends that, if you look at the text of the affidavits, they're saying, I've known these people since 2000, I know them as a couple, I know that they live together, they're, you know, a loving couple, et cetera. And affidavits of that sort undoubtedly could have been presented if Ms. Getachew had only asked for it. But the uncontroverted evidence in this case is that she never asked for it. And I think it's important that you take into, you know, consideration the fact that at this point, everybody agrees that the marriage is bona fide. USCIS itself has approved the petition. And if they — if she could meet her burden in 2006, it's certainly plausible that she could have met that burden in 2004, two years earlier. The only other reason that the board gave for denying the motion to reopen is that the Immigration Service had opposed the motion to reopen. And under Velarde-Pacheco, the service's non-opposition is a necessary condition to approval of a Velarde-Pacheco motion. Now, that particular position has already been rejected by the Second and Third Circuits. But, you know, one thing that the Second and Third — The third circuit that followed that position, there were two that don't and one that does. Biscayne, yeah, the Sixth Circuit. Yeah. That decision is entirely wrong, and I just want to talk about that for a second. But before I get to that, I just want to point out, one thing that is missing from the Second and Third Circuit's decisions is any reference to the regulations. The regulations provide — and this is at HCFR 1003.1d12 — and it says, quote, Board members shall exercise their independent judgment and discretion in considering and determining the cases coming before the board. They don't get to just delegate their discretion to the government, one of the adversarial parties in the cases that come before them. The regulations plainly provide that they must exercise their independent judgment and discretion. They're not doing that if they give the DHS essentially a veto over motions to reopen. Now, Judge Reinhart asked about Biscayne, and I think Biscayne is — it's an interesting case. It comes out the other way. But if you look at that, it's an example of exactly why it's inappropriate to give the Board of Immigration Appeals veto power — or give the government veto power over these sorts of motions to reopen. In Biscayne, the government opposed a Velarde-Pacheco motion, and it gave two reasons to do so. It said that the respondent in that case had failed to establish the bona fides of the marriage, and secondly, the government argued that the respondent had failed to comply with the IJ's grant of voluntary departure, and under the board's decision in matter of char, he was therefore ineligible for adjustment of status. Now, let's take that second one first. On the second point, the government's justification that he had overstayed his voluntary departure, was therefore ineligible under matter of char, was just blatantly incorrect. Because for 30 years, the Board of Immigration Appeals has held that if you file a timely appeal, that tolls the running of the voluntary departure period. So the government's proffered justification for opposing the motion was inconsistent with some 31 years of precedent. The key case is matter of chulares at 16 INN 168. But ever since 1977, the board has said if you file a timely appeal, the voluntary departure period has stayed. But the government in Biscayne was opposing a motion to reopen, arguing exactly the opposite. Their position was patently wrong. But under Velarde-Pacheco, the Board of Immigration Appeals is supposed to defer to that patently wrong interpretation of the law. Now, you're talking about the second motion to reopen, the denial of the second motion? In Biscayne? No, in this case. No. In this case, I'm talking about Biscayne. And I'm saying Judge Reinhart says that although two circuits have rejected Velarde-Pacheco's conclusion, that if the government opposes the motion to reopen, that the government opposed it. No, I understand. But my question is, the second motion to reopen was denied on the ground, am I correct or not, that the government opposed it. The first motion was, and in the second motion, they said because the government had opposed the first motion, then that necessarily would have been denied, and hence, I think they're saying no prejudice. But, you know, if it just go ahead, Your Honor. I'm sorry. Okay. Your whole argument is on the motion to reopen. What about asylum? The asylum claim, when you look at the testimony, the testimony on the asylum claim is all over the map. You know, I mean, she wasn't deemed not credible, but if you look at her testimony, it's obvious she doesn't know whether her family was deported. She doesn't know for sure. She doesn't know whether or how long her father was in jail. I don't think we can make out a past persecution claim based on that stuff. But what I do think is clear from her testimony is, and this is on page 802 of the administrative record, she testified that when she contacted the Ethiopian embassy in an effort to renew her passport, she was told, quote, we don't recognize your Ethiopian citizenship. Well, she didn't submit an affidavit or anything. We just have this. We have her testimony. Well, I called them and I didn't follow up. That's right. Is that sufficient? Well, the immigration judge said that's not sufficient because, you know, there's no corroboration. But he focused on the fact that the country report had said that they're no longer deporting people. But just right below that section of the country report that the immigration judge was focused on, this is on page 1096 of the administrative record, it says, quote, the law requires citizens and residents to obtain an exit visa before departing the country. And it goes on to say Eritreans and Ethiopians of Eritrean origin have been able to obtain exit visas, but often are not permitted to return to the country. I mean, it corroborates exactly what she's saying. And it also corroborates her lawyer statement on the record in here that if you send the passport, sometimes they just don't give it back. But her testimony on that point is corroborated by the State Department that says often Eritreans and people of Eritrean ethnicity are unable to return. So on that point, I think the case should be remanded so that the judge can reconsider that because he never there was never any administrative determination about whether she has a well-founded fear of being unable to return. And if so, whether refusal to allow her to reenter the country would constitute persecution. And as we pointed out in our 28J letters, the Seventh Circuit's considered this on a number of identical situations where ethnic Eritreans were refused reentry. Even though they weren't deported, they were refused reentry. And the Seventh Circuit said, this sounds like persecution, but in all those cases it remanded it back. Kennedy. What is it? What are you asking us to do in this case? Should we first determine the motion to reopen? Our strongest claim is the motion to reopen. And obviously, if you reopen it, we don't think you even need to go to the asylum claim. If we lose on the motion to reopen, I think a remand is appropriate on the asylum claim for the reasons I just set forth. Okay. Thank you.  Thank you, Your Honor. May it please the Court. My name is Anthony Norwood. I'm here today representing the Respondent. Your Honors, the first motion to reopen was not denied because the DHS opposed it. It was denied as untimely. The second motion to reopen was denied for four, I believe, four of the five Valerity Pacheco standards. It was untimely. It was number borrowed. She did not show. It's untimely, even though it's a ineffective assistance of counsel claim? They went to the ineffective assistance of counsel claim to find out if the untimeliness should be told. It's a second stage. They went to see. They went to an analysis in the second motion to reopen to see if the untimeliness should be told. It's not the first analysis, the first step analysis of whether there's clear and convincing evidence of the marriage. It's a second stage analysis of whether there's prejudice to show. Doesn't this really turn, then, with respect to the reopening on the ineffective assistance of counsel? Does it really turn on the ineffective assistance of counsel on the first one? I don't think so, because it's untimely and it's number borrowed, but then if we do go to the the first one was untimely. First one was untimely. But she was based on this marriage, right? But it was based on the marriage. Okay. The second one had the second one had more material in it that also related to the It does, Your Honor. But as the court points out, even in the second one, and as Petitioner's counsel seemed to almost admit, there's insufficient, very weak evidence that the marriage was valid as of April 4th, 2007. Let's say on the timeliness, the first one was untimely. The second one says the reason it's untimely is because of ineffective assistance of counsel. Yes. So that's not an untimely claim, ineffective assistance. No, it's not an untimely claim. So then we get to the merits of that. And your answer to that is they didn't provide sufficient evidence to show, make a plausible showing that they could have shown at the time of the first one that it was a bona fide marriage. Yes. And that's why there was no prejudice to excuse the timeliness for the second motion to reopen. So it's a prejudice analysis under the ineffective assistance of counsel claim to the timeliness. And all it can show is that there's a plausible showing that they could have made out a case of a bona fide marriage. I don't know that plausibility is the standard, Your Honor. It's whether it's prejudice under the due process claim. And it has to show virtually that the motion should be granted so that it's prejudice. It's a very high standard. Well, I think it is. You have to make a plausible showing that it could be granted. Well, all we have is a marriage certificate. We have her attorney saying that they didn't live together. Those photographs that counsel pointed to are undated photographs. They have handwritten dates next to them. And we have a phone bill for about $4. No, and we've got an affidavit that says, I was not asked to preserve evidence there. And here's some evidence from a year later than that date or less than a year that we did present to another part of the agency. Yet we do have that after the fact affidavit. And we do have what it looks like a buildup of equities and a child. And the later the visa was approved. The I-130 was subsequently approved. So help me because I'm having a little bit of trouble here. If in the second motion to reopen, we were to find that there was prejudice to her in the untimeliness of the first motion based on what's in the second one. If we were to find that she showed prejudice in the first one being filed untimely so that she had ineffective assistance of counsel at the time of the first one, isn't that what this really turns on? I mean, you're saying there was no prejudice because it's very weak. Yes. If we were to disagree with you, then there would be a different result. So this whole, in that sense, it turns on whether or not we agree that there was no prejudice in the untimely filing of the first one, so as to amount to ineffectiveness. I know this gets very confusing. It does get confusing, but I think you'd still have to note that it's, that there's not clear and convincing evidence of the marriage and that DHS opposed for all those reasons. But we, the second motion to reopen does not satisfy four of the five validity tests. But isn't it true that an attorney's failure to investigate and present factual and legal basis of a claim that would amount to ineffective assistance of counsel? I'm sorry, Your Honor. Could you repeat the question? The attorneys failed to collect this information. Doesn't this in itself amount to ineffective assistance of counsel? I think if you look at, if you look at her prior attorney's statements and her letter, she knew that the bona fides weren't there, that she couldn't satisfy the Valardi-Pocheco test. And so it looks, she, they weren't living together. There was no evidence of it. And so she, I believe it's clear she told her to go get, to bring this together, bring me some evidence. Let's get this marriage bona fide. And by November, she gave it a shot. She still didn't do it very well by November of 2004. It didn't develop into the marriage as it is, the valid marriage, the bona fide marriage, until 2006 or 2007. The reason that she didn't do it well is that her lawyer didn't urge her to bring in the appropriate documentation. Isn't that correct? Well, that's what her affidavit says, but her, but she's contradicted by her own lawyer and says, and who says they weren't living together. There were, there were no bona fides to the, to the marriage. So she's saying she didn't think she could. Her own lawyer said it was not a valid marriage? Her own lawyer said she didn't think she could, she could pass the Valardi-Pocheco test at, within the 90 days of the, of the VA decision, by April of 2004. That's what the first, that's what the first attorney said. Now, you say that she didn't pass the first four of the Valardi-Pocheco test on the second motion to reopen? Second motion to reopen was untimely and was. No, it's not untimely if it's for ineffective assistance of counsel. If, yes, Your Honor. All right. So it doesn't fail the first Valardi test. The second one is numerically barred. It's not numerically barred if it's ineffective assistance of counsel claim. So that, it's not, so it doesn't fail the first or the second. The third is barred by matter of shore or any procedural grounds. It doesn't fail that one either. No, it doesn't, Your Honor. No. So the only thing we're talking about, whether it presents the clear and convincing evidence indicating a strong likelihood that the marriage is bona fide, that's the only question, the one Judge Schroeder asked you. That's the only issue before us. It's prejudice under the ineffective assistance. Yes. Right. That's the same thing. Prejudice. It's not quite the same standard, Your Honor. To show prejudice, you have to show a clear probability. You have to show a very strong case that the relief would have been granted. And it's not a strong case that the relief would have been granted at the time of the ineffective assistance of counsel claim. And that's what we have to decide. That's an issue you have to decide. One other question. Are you from Washington or are you from here? I'm from Washington, Your Honor. You're from Washington. Do you have authority to answer the question of whether you would be willing to have this case referred to our mediation, our mediator that we do with immigration cases from time to time, particularly cases where there's, you know, something like this grant of the I-30, 130 petition? It's not binding. It's just a question of discussing whether or not you would be willing to do it. Your Honor, I think I've been told that I don't have authority to go into mediation at this point. But I don't think mediation of an doing this for 20 years, I don't think mediation in this case is going to happen because the two motions to reopen were so far out. I don't think that the agency is going to voluntarily do it. And it just doesn't You'd rather be told to do it, then. It's not that I would rather be told to do it, Your Honor. All right. That's fine. It seems, you know, sometimes the government It's not a question of whether the government has to do something. It sometimes decides, after discussing it, that this isn't a case in which we really want to deport somebody who's the mother of a 2-1⁄2-year-old child, that it's at your discretion. And you're not required to prosecute cases, you're not required to say this is somebody we really want to deport, that we may have more important things to do with the government than separate this mother from her child. I understand that, Your Honor. And the agency still has that discretion. But today here, I'm defending the Board of Immigration Appeals' decision. And I think the Board of Immigration Appeals' decision should be You don't think there's any point in asking them whether they would be willing to? At this point, from my experience, Your Honor, I don't think there is. Well, we're hoping that what they're doing these days is better than what they did with their past experience. They've been more willing to go to our mediation than they were in the past. We have been going to more mediation. So, you know, if you ask and they say yes, you can let us know. Okay. If we don't hear from you in, say, a couple of weeks, then we'll assume you're following the past practice. Okay. I'll just point out this. The Petitioner seems to admit there's no past persecution in Ethiopia, and the evidence is just there's not much evidence of certainly not compelling objective evidence that the well-founded fear decision should be made. Are there any further questions of the government? Thank you very much, Your Honor. First, the government's just wrong to suggest that to establish prejudice, we have to show that the motion would have been granted. The standard is plausible grounds. And Judge Reinhart's opinion in Mohammed v. Gonzalez, 400 F. 3rd, 785, 9th Circuit, 2005, makes that clear. The government's also simply incorrect in suggesting that Ms. Getachew's letter somehow contradicts Ms. Ahmed's claim that she was never asked to get evidence of the bona fides. This is at page 75. And what Ms. Getachew actually says to justify her conduct actually shows ineffective assistance of counsel. What she says to explain why the motion wasn't filed is she says, quote, I explained the requirement of a husband and wife living together to qualify for benefits under Section 245 of the Immigration and Nationality Act, and they were not living together. There's no requirement that a husband and wife be living together full time for benefits under Section 245. Her statement's just wrong. She says that she wouldn't file the motion until she was assured that they were going to resume living together. That is not a requirement. Couples are temporarily separated all the time for reasons of education. She's mistaken on the law. Her justification actually shows ineffective assistance of counsel. Thank you. Thank you. The case just argued is submitted for decision. And that concludes our argument calendar for today. I just wanted to ask a question in the audience. At one point, we had agreed, I believe, to meet with some students. Are they still in the audience? I guess they are. All right. We're going to adjourn and confer, and Judge Nelson and I will return in about 15 minutes if you're willing to be patient. Is that all right? 15 minutes or more. Well, about 15 minutes. A minimum of 15 minutes. Be patient. Thank you, counsel. That concludes the court session for today, and the Court stands adjourned. All rise. This court for this session stands adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Schroeder, Nelson, Reinhardt